45 P.3d 368

**Steven Willard DOUGLAS, Plaintiff–Appellant,**

v.

**Frances Mary BRITTLEBANK–DOUGLAS, Defendant–Appellee.**

No. 23825.

Intermediate Court of Appeals of Hawai'i.

March 22, 2002.

As Amended March 28, 2002.

Pablo P. Quiban, (Evangelista & Quiban, of counsel), on the brief, for Plaintiff–Appellant.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant Steven Willard Douglas (Steven or Plaintiff) appeals from the family court's September 20, 2000 "Order Re: Defendant's Motion and Affidavit for Post–Decree Relief Filed on May 30, 2000; Entry of Judgment." We vacate and remand.

## I.

### BACKGROUND

Steven and Defendant–Appellee Frances Mary Brittlebank–Douglas (Frances or Defendant) were residents of Hawai'i when they were married on April 11, 1991, when their daughter was born in February 1993, and when their son was born in April 1995.

This case was commenced on June 5, 1995, when Steven filed a Complaint for Divorce. At a hearing on March 4, 1996, the family court orally granted the divorce and stated on the record the stipulations of the parties. On July 14, 1997, the court entered a Decree Granting Absolute Divorce and Awarding Child Custody. This decree awarded legal custody of the children jointly to the parties and awarded physical custody of the children to Frances subject to Steven's specified rights of reasonable visitation.

On March 30, 1998, the court entered a stipulated Order for Post/Decree Relief (March 30, 1998 Stipulated Order) ordering

1. We note that Washington D.C. has enacted the Uniform Interstate Family Support Act in

(1) Steven to pay child support of $500 per month commencing May 1, 1998; and $987 per month upon the closing of the sale of the residence of the parties; (2) Frances to submit her three most recent pay statements to Steven's attorney; and (3) Steven and Frances to exchange their three most recent pay statements at the time of the sale of the house.

On May 30, 2000, Frances filed a motion advising the court that the sale of the residence occurred on November 23, 1999, and seeking a determination of the arrearages, the entry of judgment for the arrearages plus statutory interest, the entry of order assigning and garnishing Steven's income, and the entry of an order requiring Steven to pay all of the legal expenses incurred by Frances. In other words, Frances sought the enforcement of the March 30, 1998 Stipulated Order.

On July 3, 2000, the court entered an order (July 3, 2000 Order) continuing the hearing on the May 30, 2000 motion to August 23, 2000, because of "Defendant's lack of personal service of said Motion, on Plaintiff, who resides outside of the State of Hawaii."

On August 3, 2000, Frances filed a proof of service of various documents on Steven on July 31, 2000, in Washington, D.C.[1] One of the documents served was the July 3, 2000 Order.

At the hearing on August 23, 2000, counsel for Frances discussed the matter with District Family Judge Bode Uale, in relevant part, as follows:

[COUNSEL]: ... My client is in Zimbabwe where she resides, ... [Steven is] in Washington, D.C.

An attorney called me this morning, her name is Judy Bragan, and she was calling from Virginia, and she told me that she was representing Mr. Douglas and that Mr. Douglas had received his CSEA administrative order and she was confused as to the, how that impacted this motion.

D.C.Code Ann. Chapter 46–302 (1998).

And I explained to her that in Hawaii there are two separate, Family Court and CSEA are two separate entities, and that just because CSEA filed, it does not mean it voids or impacts the family court motion, and I tried to explain the procedure that we follow as best as, as well as I could. And what I asked her to do was to tell me what she wanted me to tell the Court because she hadn't sent the Court anything and nor did Mr. Douglas, and so what she said that it was that she wanted me to let the Court know that she wanted a continuance, so I told her I would let the Court know that.

And she faxed me a letter that she had sent to Michael Meaney dated August 23rd, which is today, talking about the administrative hearing and what to do on that point, and so I asked her to send me that, she did, along with the administrative order from CSEA, she did, so I have all that if the Court wants to look at it. And again, I told her I would tell the Court what she's asking for is the continuance.

What I don't know is, I'm gonna have to leave this up to your Honor, she's not licensed to practice in Hawaii that I'm aware of, so she has no standing to do anything today, and he hasn't contacted the Court, and I told her had I not heard from him and not even received her phone call, I would automatically ask for a default, but since she called me and represented herself as an attorney, I would pass it on to the Court which I'm doing.

And quite honestly, your Honor, if you wanted to, you know, discuss this a little bit further in terms of ideas of what we have to do, I'm certainly happy to hear the Court's advice cause I'm really not sure where you wanna go.

THE COURT: Well, I can give her one continuance, and if you can communicate to her and tell her she needs to do something, either obtain counsel here, or appear somehow.

. . . .

THE COURT: Okay. Well, I'm gonna note that he's not here and that you were called by an attorney from D.C. I'm gonna continue this matter . . . .

. . . .

THE COURT: to September 6th.

On August 23, 2000, Judge Uale entered an order rescheduling the hearing on the May 30, 2000 motion to September 6, 2000. This order stated, in relevant part, as follows: "Defendant/movant shall be allowed to testify via telephone, as she currently resides in Zimbabwe (Bulawao [sic] district). Defendant's presence is waived for today's hearing. Plaintiff shall be notified of the new hearing date by [Defendant's attorney] sending this Order to Ms. Bragan."

In his opening brief, Steven states that Judy Bragan is an attorney licensed in the State of Virginia.

At the hearing on September 6, 2000, counsel for Frances appeared and requested waiver of the presence of Frances. Per diem District Family Judge Lilian Ramirez–Uy granted the request. Counsel for Frances advised the court that she had sent a copy of the August 23, 2000 order to Ms. Bragan and that

I did ask her whether she, whether Mr. Douglas was going to be having a Hawaii attorney present today, and she said no, and she gave me no indication that either she was going to appear on his behalf either by phone or in person, or attempt to, given that she's not licensed in Hawaii, I asked her that too, she said that she's not, or whether Mr. Douglas was gonna make any effort to address this today[.]

Judge Ramirez–Uy granted counsel's oral motion to proceed by default, granted the May 30, 2000 motion, and allowed counsel time to submit an expedited order.

On September 20, 2000, Judge Ramirez–Uy entered an "Order Re: Defendant's Motion and Affidavit for Post–Decree Relief Filed on May 30, 2000; Entry of Judgment" that stated, in relevant part, as follows:

Defendant's Motion and Affidavit for Post–Decree Relief Filed on May 30, 2000 (hereinafter "Motion") came on for hearing on the date and time and before the Judge indicated above. Present at the hearing were [sic] Defendant's attorney, . . .; Defendant's presence at the hearing was waived.

Plaintiff, STEVEN WILLARD DOUG-LAS, was served with the Motion and Affidavit for Post–Decree Relief and Attachments (filed on May 30, 2000); the Motion for Personal Service Without the State; Affidavit; Order for Personal Service Without the State; and the Order Continuing Motion and Affidavit for Post–Decree Relief Filed on May 30, 2000 (filed on July 3, 2000).

The Order Continuing Motion and Affidavit for Post–Decree Relief filed on August 23, 2000 was faxed and mailed to Judith Bragan, attorney in Fairfax, Virginia, on August 30, 2000, pursuant to her representation to [counsel for Frances] that she represents Plaintiff in this matter.

Based on Plaintiff's failure to appear at the hearing, or to have counsel appear at the hearing on his behalf, the Court grants Defendant's oral motion to proceed by default. Defendant's Motion and Affidavit for Post–Decree Relief, filed May 30, 2000 is granted. . . .

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. *Child Support.* Pursuant to the Stipulated Order for Post–Decree Relief filed on March 30, 1998, . . ., Plaintiff shall pay the sum of $987.00 per month for the support of the parties [sic] two (2) children. Said payments shall commence on December 5, 1999, and a new Order for Income Withholding shall be filed with this Order. Payments shall continue to be made through the Child Support Enforcement Agency.

2. *Child Support Arrearages.* . . . Plaintiff is in arrears in the amount of $487.00 × 9 months (December 1999–August 2000) = $4,383.00 minus $600.00 (Plaintiff sent Defendant a check in February 2000)= $3,783.00 total arrearages, which Plaintiff shall pay to Defendant within sixty (60) days of the date of this hearing.

3. *Interest on Child Support Arrearages.* Plaintiff shall also pay to Defendant interest on the $3,783.00 in child support arrearages, at the statutory rate of ten percent (10%), for a total of $378.30, due within sixty (60) days, by November 7, 2000.

4. *Entry of Judgment.* Judgment is hereby entered against Plaintiff in favor of Defendant, for arrearages and interest thereon, in the amount of $4,161.30. Said amount shall be paid to Defendant within sixty (60) days, by November 7, 2000. Interest shall continue to accrue thereafter, at the statutory rate on any unpaid balance.

5. *Attorney's Fees and Costs.* Plaintiff shall pay Defendant's reasonable attorney's fees and costs that have been incurred by Defendant pursuant to this enforcement action. Defendant's attorney, . . ., shall submit to Judge Ramirez–Uy an Affidavit to Verify Attorney's Fees and Costs, along with an itemized billing for Defendant from [Defendant's counsel's] office, for *in camera* review by Judge Ramirez–Uy.

Steven filed a notice of appeal on October 19, 2000. On November 9, 2000, Judge Ramirez–Uy entered an order requiring counsel for Frances to "prepare proposed findings of fact and conclusions of law by December 1, 2000 and submit to the Court." On December 8, 2000, Judge Ramirez–Uy signed and filed the findings and conclusions submitted by counsel for Frances. Conclusion of Law no. 7[2] stated as follows:

Plaintiff shall pay to Defendant's counsel as and for reasonable attorney's fees and costs the total sum of $2,172.20 ($2,000.00 in fees plus $172.00 in costs); Such sum shall be payable by agreement of the parties. If no agreement is reached, said award shall be reduced to a Judgment.

## II.

## DISCUSSION

### A.

Hawai'i's Uniform Interstate Family Support Act states in Hawaii Revised Statutes (HRS) Chapter 576B (2001), in relevant part, as follows:

---

**2.** Conclusion of Law no. 7 is not a conclusion of law. It is an order.

**[§ 576B–201] Bases for jurisdiction over nonresident.** In a proceeding to establish, enforce, or modify a support order ..., a tribunal of this State may exercise personal jurisdiction over a nonresident individual ... if:

(1) The individual is personally served with summons or notice within this State;

(2) The individual submits to the jurisdiction of this State by consent, ...;

(3) The individual resided with the child in this State;

(4) The individual resided in this State and provided prenatal expenses or support for the child;

(5) The child resides in this State as a result of the acts or directives of the individual;

(6) The individual engaged in sexual intercourse in this State and the child may have been conceived by that act of intercourse;

(7) The individual asserted parentage in the office of health status monitoring maintained in this State by the department of health; or

(8) There is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.

**[§ 576B–202] Procedure when exercising jurisdiction over nonresident.** A tribunal of this State exercising personal jurisdiction over a nonresident under section 576B–201 may apply section 576B–316 to receive evidence from another state, and section 576B–318 to obtain discovery through a tribunal of another state....

. . . .

**[§ 576B–203] Initiating and responding tribunal of State.** Under this chapter, a tribunal of this State may serve as an initiating tribunal to forward proceedings to another state and as a responding tribunal for proceedings initiated in another state.

. . . .

**[§ 576B–205] Continuing, exclusive jurisdiction.** (a) A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child support order:

(1) As long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) Until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

(b) A tribunal of this State issuing a child support order consistent with the law of this State may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter.

(c) If a child support order of this State is modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter, a tribunal of this State loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State, and may only:

(1) Enforce the order that was modified as to amounts accruing before the modification;

(2) Enforce nonmodifiable aspects of that order; and

(3) Provide other appropriate relief for violations of that order which occurred before the effective date of the modification.

. . . .

**§ 576B–207 Recognition of controlling child support orders.** (a) If a proceeding is brought under this chapter and only one tribunal has issued a child support order, the order of that tribunal controls and must be so recognized.

(b) If a proceeding is brought under this chapter, and two or more child support orders have been issued by tribunals of this State or another state with regard to the same obligor and child, a tribunal of this State shall apply the following rules in determining which order to recognize for

purposes of continuing, exclusive jurisdiction:

(1) If only one of the tribunals would have continuing, exclusive jurisdiction under this chapter, the order of that tribunal controls and must be so recognized.

(2) If more than one of the tribunals would have continuing, exclusive jurisdiction under this chapter, an order issued by a tribunal in the current home state of the child controls and must be so recognized, but if an order has not been issued in the current home state of the child, the order most recently issued controls and must be so recognized.

(3) If none of the tribunals would have continuing, exclusive jurisdiction under this chapter, the tribunal of this State having jurisdiction over the parties shall issue a child support order, which controls and must be so recognized.

(c) If two or more child support orders have been issued for the same obligor and child and if the obligor or the individual obligee resides in this State, a party may request a tribunal of this State to determine which order controls and must be so recognized under subsection (b). The request must be accompanied by a certified copy of every support order in effect. The requesting party shall give notice of the request to each party whose rights may be affected by the determination.

For the purposes of this subsection, service of the notice shall be by personal service or certified mail, return receipt requested. After initial service is effected, additional service upon a party shall be satisfied by regular mail to the party's last known address. In any child support enforcement proceedings subsequent to an order, upon a showing that diligent effort has been made to ascertain the location of a party, notice of service of process shall be presumed to be satisfied upon delivery of written notice to the most recent residential or employer address on file with the state case registry.

(d) The tribunal that issued the controlling order under subsection (a), (b), or (c) is the tribunal that has continuing, exclusive jurisdiction under section 576B–205.

(e) A tribunal of this State which determines by order the identity of the controlling order under subsection (b)(1) or (2) or which issues a new controlling order under subsection (b)(3) shall state in that order the basis upon which the tribunal made its determination.

(f) Within thirty days after issuance of an order determining the identity of the controlling order, the party obtaining the order shall file a certified copy of it with each tribunal that issued or registered an earlier order of child support. A party who obtains the order and fails to file a certified copy is subject to appropriate sanctions by a tribunal in which the issue of failure to file arises. The failure to file does not affect the validity or enforceability of the controlling order.

. . . .

[§ 576B–306] **Inappropriate tribunal.** If a petition or comparable pleading is received by an inappropriate tribunal of this State, that tribunal shall forward the pleading and accompanying documents to an appropriate tribunal in this State or another state and notify the petitioner where and when the pleading was sent.

■ Based on HRS § 576B–205(a)(1) and the fact that Frances resides in Zimbabwe with the children and that Steven resides in the Washington D.C./Virginia area, Steven contends that the family court did not have any jurisdiction to enter the March 30, 1998 Stipulated Order.

Under the Uniform Interstate Family Support Act, does the state that issued the child support order retain the right to enforce that order when the father, mother, and children are not residents of that state?

In the following two situations, the answer is no: (1) under HRS § 576B–205(a)(2), when all of the parties who are individuals have filed written consents with the tribunal of the issuing state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction; and (2), under HRS

§ 576B–205(b), when the order has been modified by a tribunal of another state pursuant to the Uniform Interstate Family Support Act (UIFSA) or a law substantially similar to it. The instant case does not present either of the above situations.

When Steven, Frances, and the children no longer resided in Hawai'i, the basis for Hawai'i's "continuing jurisdiction" over Steven and the child support order was HRS § 576B–201 which, as noted above, states, in relevant part, that "[i]n a proceeding to establish, enforce, or modify a support order ..., a tribunal of this State may exercise personal jurisdiction over a nonresident individual ... if: ... (3) The individual resided with the child in this State[.]" It is a fact that Steven resided with the children in Hawai'i.

HRS § 576B–205(a)(1) specifies that when Steven, Frances, and the children do not reside in Hawai'i, Hawai'i does not have "continuing, exclusive jurisdiction over a child support order." HRS § 576B–205(b) states that Hawai'i "may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter." Reading these two sections together, the clear implication is that although Hawai'i loses its "continuing, exclusive jurisdiction," and its "continuing jurisdiction to modify the order," Hawai'i retains its "continuing jurisdiction" to enforce the order as long as the order has not been modified by a tribunal of another state pursuant to HRS Chapter 576B or a law substantially similar to it.

The Official Comment of the National Conference of Commissioners on Uniform State Laws to that part of the UIFSA that correspond with HRS Chapter 576B supports this view. The Official Comment to that part of the UIFSA that corresponds with HRS § 576B–201 states that "[t]he intent is to insure that every enacting state has a long-arm statute as broad as constitutionally permitted." It also states that

> UIFSA creates a structure designed to provide for only one support order at a time. This one order regime is facilitated and combined with a broad assertion of

personal jurisdiction under this long-arm statute. The frequency of a two-state procedure involving the participation of tribunals in both states should be substantially reduced by the introduction of this long-arm statute.

The Official Comment to that part of the UIFSA that corresponds with HRS § 576B–205 states:

> If all parties and the child reside elsewhere, the issuing state loses its continuing, exclusive jurisdiction—which in practical terms means the issuing tribunal loses its authority to modify its order. The issuing state no longer has a nexus with the parties or child and, furthermore, the issuing tribunal has no current information about the circumstances of anyone involved. Note, however, that the one-order of the issuing tribunal remains valid and enforceable. That order is in effect not only in the issuing state and those states in which the order has been registered, but also may be enforced in additional states in which the one-order is registered for enforcement after the issuing state loses its power to modify the original order, .... The one-order remains in effect until it is properly modified in accordance with the narrow terms of the Act[.]

In other words, although the loss of "continuing, exclusive jurisdiction ... means the issuing tribunal loses its authority to modify its order[,]" it does not mean that the issuing tribunal loses its authority to enforce the order.

We conclude that HRS Chapter 576B–201 authorized the family court to enforce the March 30, 1998 Stipulated Order. Our conclusion is supported by the following precedent: *Jurado v. Brashear,* 782 So.2d 575 (La.2001); *Youssefi v. Youssefi,* 328 N.J.Super. 12, 744 A.2d 662 (App.Div.2000); *Linn v. Child Support Enforcement,* 736 A.2d 954 (Del.1999); and *Com., Dep't. of Social Services, Div. of Child Support Enforcement ex rel. Kenitzer v. Richter,* 23 Va.App. 186, 475 S.E.2d 817 (1996).

### B.

█ Steven contends that he "was not notified of the final continued hearing date of

September 6, 2000[,]" and on that basis argues that the court erred when it decided that he was in default for failing to appear at that hearing. We agree.

Hawai'i Family Court Rules (HFCR) Rule 5 required service of the August 23, 2000 order on Steven or upon an attorney representing Steven. Service upon Judy Bragan did not satisfy this requirement because (1) assuming Judy Bragan was notified, and (2) assuming Judy Bragan is an attorney-at-law representing Steven in this matter, (3) Judy Bragan was not licensed to practice law in Hawai'i, and (4) Judy Bragan was not an attorney of record for Steven as permitted by Rule 1.9 of the Rules of the Supreme Court of the State of Hawai'i. There being no evidence of compliance with HFCR Rule 5 (service and filing of pleadings and other papers), we conclude that Steven was not properly served/notified of the September 6, 2000 hearing and cannot be held in default for not being at that hearing.

## CONCLUSION

Accordingly, we vacate the family court's September 20, 2000 "Order Re: Defendant's Motion and Affidavit for Post–Decree Relief Filed on May 30, 2000; Entry of Judgment" and remand for further proceedings consistent with this opinion.