[Cite as *Friedah v. Friedah*, 2019-Ohio-1842.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

KRISTEN FRIEDAH,                         :        **O P I N I O N**

         Plaintiff-Appellee,              :

    - vs -                                  :        **CASE NO.  2018-L-086**

FREDRICK FRIEDAH,                       :

         Defendant-Appellant.          :

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division. Case No. 2013 DR 000383.

Judgment: Affirmed.

*R. Russell Kubyn*, Kubyn & Ghaster, LLP, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellee).

*Frank R. Brancatelli*, 7318 Gallant Way, Painesville, OH 44077 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1}    On January 17, 2017, the Lake County Court of Common Pleas, Domestic Relations Division, granted appellee, Kristen Friedah's ("Mother"), motion for contempt. Appellant, Fredrick Friedah ("Father"), appeals from the trial court's June 1, 2018 dismissal of his motion to vacate the order of contempt.

{¶2}    The parties married in October 1998, and three children were born of the marriage.  The parties separated in October 2011, at which time the three minor children resided with Mother in Ohio, and Father resided in New York.

**{¶3}** On June 28, 2013, Mother filed a complaint for divorce in the Lake County Court of Common Pleas, Domestic Relations Division. Father was served with the complaint and notice of hearing by certified mail, but he did not answer, plead, or otherwise appear.

**{¶4}** The complaint for divorce was granted on April 18, 2014 ("divorce decree"), and Mother was designated residential parent and legal custodian of the three minor children. Father was ordered to pay child support and an additional amount for medical support when health insurance is not available. Father was also ordered to pay a sum of $1,555.00 towards Mother's attorney fees and court costs and a sum of $4,688.00 towards a division of tax liability debt. Father was served with the divorce decree by regular mail.

**{¶5}** In July 2014, Mother filed a motion to relocate to Tennessee. On August 29, 2014, Father filed a response indicating he had no objection to Mother relocating to Tennessee with the three minor children. Mother provided her new address to the trial court and Lake County Child Support Enforcement.

**{¶6}** On May 9, 2016, Mother filed a motion for contempt, requesting the trial court order Father to appear and show cause why he should not be held in contempt for failing to pay health care expenses for the minor children in the amount of $3,717.65; attorney fees in the amount of $1,555.00; and tax liability debt in the amount of $4,688.00. On June 6, 2016, Mother filed an amended motion, with leave of court, that included a statutorily required affidavit.

**{¶7}** The trial court issued an order to Father to appear and show cause at a pretrial hearing before the magistrate. According to the magistrate's decision, both Father

and Mother appeared pro se for the pretrial on September 1, 2016. A transcript of the pretrial hearing is not in the record on appeal.

{¶8} A trial was scheduled for December 1, 2016. According to the magistrate's decision, Mother appeared pro se, but Father did not appear or otherwise contact the trial court. The record on appeal does not include a transcript of the trial.

{¶9} The magistrate issued findings of fact and conclusions of law on December 12, 2016. The magistrate concluded Mother had provided clear and convincing evidence that Father was in contempt of the trial court's April 18, 2014 divorce decree by failing to pay $4,668.00 for the division of tax liability debt; $1,555.00 in attorney fees; and $3,647.65 in uninsured medical expenses for the minor children. Father was served with the decision via regular mail and did not file any objections.

{¶10} On January 17, 2017, the trial court adopted the magistrate's decision. Father was ordered to serve 20 days in the Lake County Jail unless he purged his contempt by paying Mother the sum of $9,890.65 within 24 months of the order at the rate of $412.11 per month. The trial court ordered Mother to notify the court by motion if the contempt was not purged so that an imposition hearing could be set.

{¶11} On March 8, 2018, Mother filed a motion to impose sentence, stating Father had failed to comply with the January 17, 2017 judgment entry. Mother requested the trial court immediately impose the 20-day jail sentence and award her attorney fees. On the same date, Mother filed a motion to modify child support and a motion requesting the trial court order Father to appear and show cause why he should not be held in contempt for failure to pay child support as ordered.

3

{¶12} A hearing was set for June 21, 2018, on the motion to impose sentence and the motion to show cause. Father was served with the motions and hearing notice via certified mail.

{¶13} On May 14, 2018, Father filed a "Motion to Vacate Void January 17, 2017 Judgment Entry," contending the trial court did not have continuing personal jurisdiction over either party because they both lived outside the state of Ohio. Father argues none of the provisions in the Uniform Interstate Family Support Act of 2008 establish a basis for the trial court's continuing jurisdiction to enforce or modify a previously issued child support order. He argued Mother would not be prejudiced by vacation of the order, because she could have the matter "transferred/certified to a tribunal in the forum in which she has voluntarily relocated."

{¶14} Mother filed a brief in opposition, responding that a trial court has the inherent authority to enforce its own prior orders through contempt proceedings even when the parties and children no longer reside in the issuing state.

{¶15} The trial court dismissed Father's motion to vacate, stating a domestic relations court has ongoing jurisdiction to enforce its own orders. The trial court relied on Ohio Civil Rule 75(J), which applies to divorce, annulment, and legal separation actions. The rule provides, in part: "The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ. R. 4 to 4.6." Thus, the trial court stated that its continuing jurisdiction to enforce a divorce decree is invoked when service has been perfected or when a party that is not properly served voluntarily appears before the court and defends on the merits of the case. The trial court concluded as follows:

4

Herein, Defendant has not asserted that he was not properly served. Rather, he states that the parties both currently reside outside of the State of Ohio, and without citing to any authority, argues that their change of residence precludes the Court from enforcing its orders through its contempt power. This argument is misplaced. Defendant was properly served with all motions in this case. According to the Magistrate's Decision filed December 12, 2016, Plaintiff and Defendant both appeared at the pretrial on the contempt motions, thereby submitting themselves to the Court's jurisdiction. This Court was within its power to issue the January 17, 2017 Judgment Entry finding Defendant in contempt.

Defendant further argues that the Uniform Interstate Family Support Act (UIFSA) applies to proceedings in this case. However, the motions to show cause which led to findings of contempt herein were for failure to pay tax debt, failure to pay attorney fees, and failure to pay for ordinary and extraordinary healthcare expenses for the children. These motions do not fall under the purview of UIFSA, as the Court was not adjudicating any issues related to child support. Again, the Court was within its power to find the Defendant in contempt of its prior orders.

{¶16} Father noticed an appeal from this entry and asserts two assignments of error:

[1.] The trial court erred as a matter of law when it dismissed Defendant's Motion to Vacate the January 17, 2017 Judgment Entry deemed to be void pursuant to the Uniform Interstate Family Support Act (UIFSA), specifically Ohio Revised Code §3115.201, which became effective January 1, 2016, when it failed to establish the basis upon which the Lake County, Ohio Domestic Relations Court had continuing personal jurisdiction over the nonresident defendant to enforce an order it previously issued when neither party nor the children were residents of the State of Ohio.

[2.] The trial court erred when it determined that motions to show cause which lead to findings of contempt for failure to pay a tax debt, failure to pay attorney fees, and failure to pay for ordinary and/or extraordinary healthcare expenses for the children do not fall under the purview of the Uniform Interstate Family Support Act (UIFSA).

{¶17} Both of Father's assignments of error pertain to the 2008 version of the Uniform Family Support Act ("UIFSA" or "the Act"), codified in Ohio at R.C. 3115.101 *et*

5

*seq.*, which became effective as of January 1, 2016. All states have adopted UIFSA.[1] The Act controls the establishment, enforcement, or modification of support orders across state lines and "aims at creating a system in which only one valid support order is in effect at any one time." *Cruz v. Cumba-Ortiz*, 116 Ohio St.3d 279, 2007-Ohio-6440, ¶19 (citation omitted).

**{¶18}** Under his first assignment of error, Father argues the trial court erred by dismissing his motion to vacate the order of contempt because the trial court did not establish the basis upon which it had continuing personal jurisdiction to enforce its divorce decree under UIFSA. Whether a court has jurisdiction of the parties to an action is a question of law, which is reviewed de novo. *See Bureau of Support v. Brown*, 7th Dist. Carroll No. 00APO742, 2001-Ohio-3450, *2 (Nov. 6, 2001).

**{¶19}** Father relies on R.C. 3115.201 of UIFSA, which provides eight ways in which a tribunal of this state may exercise personal jurisdiction over a nonresident in a proceeding to establish or enforce a support order:

> (1) The individual is personally served with summons within this state.
>
> (2) The individual submits to the jurisdiction of this state by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction.
>
> (3) The individual resided with the child in this state.
>
> (4) The individual resided in this state and provided prenatal expenses or support for the child.

---

1. "UIFSA is the latest in a series of laws promulgated as part of an effort to deal with the problems associated in the enforcement of interstate support orders. All states are required, by Congressional mandate, to adopt UIFSA in order to remain eligible to receive federal funding for child support. See, The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 42 U.S.C.S. Section 666(F). Ohio adopted the Act, effective January 1, 1998." *Lyles v. Lyles*, 2d Dist. Montgomery No. 18418, 2001 WL 62539, *2 (Jan. 26, 2001) (footnote omitted).

6

(5) The child resides in this state as a result of the acts or directives of the individual.

(6) The individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse.

(7) The individual asserted parentage of a child in the putative father registry maintained in this state by the department of job and family services.

(8) There is any other basis consistent with the Constitutions of this state and the United States for the exercise of personal jurisdiction.

R.C. 3115.201(A).

{¶20} Once personal jurisdiction is established in relation to a support order, the Act also provides for when personal jurisdiction may continue: "Personal jurisdiction acquired by a tribunal of this state in a proceeding under this chapter *or other law of this state* relating to a support order continues as long as a tribunal of this state has continuing, exclusive jurisdiction to modify its order or continuing jurisdiction to enforce its order as provided by sections 3115.205, 3115.206, and 3115.211 of the Revised Code." R.C. 3115.202 (emphasis added).

{¶21} What is initially gleaned from this section is that UIFSA is not the exclusive means by which one may modify or enforce a support order: a proceeding may also be brought under "other law of this state." This conclusion is further supported by the text of R.C. 3115.104(B)(1), which explicitly states that UIFSA does not "[p]rovide the exclusive method of establishing or enforcing a support order under the law of this state[.]" *See also* R.C. 3115.104(A) ("Remedies provided by this chapter are cumulative and do not affect the availability of remedies under other law[.]"). It follows, therefore, that R.C. 3115.201 does not provide the exclusive means by which a tribunal of this state may establish personal jurisdiction over a nonresident in relation to a support order.

{¶22} Father does not raise an issue with whether the trial court had personal jurisdiction to issue the original divorce decree. Rather, he argues the trial court did not have continuing personal jurisdiction under UIFSA to enforce provisions of the divorce decree in the contempt proceedings because neither the children nor the parents continued to reside in Ohio.

{¶23} Again, as stated above, UIFSA provides that personal jurisdiction "continues as long as a tribunal of this state has continuing, exclusive jurisdiction to modify its order or continuing jurisdiction to enforce its order as provided by sections 3115.205, 3115.206, and 3115.211 of the Revised Code." R.C. 3115.202. The Official Comment to the Annotated Uniform Law explains:

> It is a useful legal truism after a tribunal of a state issues a support order binding on the parties, which must be based on personal jurisdiction by virtue of *Kulko v. Superior Court*, 436 U.S. 84 (1978) and *Vanderbilt v. Vanderbilt*, 354 U.S. 416 (1957), jurisdiction in personam continues for the duration of the support obligation absent the statutorily specified reasons to terminate the order. The rule established by UIFSA is that the personal jurisdiction necessary to sustain enforcement or modification of an order of child support or spousal support persists as long as the order is in full force and effect, even as to arrears * * *. This is true irrespective of the context in which the support order arose, e.g., divorce, UIFSA support establishment, parentage establishment, modification of prior controlling order, etc. Insofar as a child-support order is concerned, depending on specific factual circumstances a distinction is made between retaining *continuing, exclusive jurisdiction to modify* an order [see section 205] and having *continuing jurisdiction to enforce* an order [see section 206]. [Emphasis added.]

{¶24} Accordingly, even though Father's initial support obligation did not arise under a UIFSA proceeding, we must look to UIFSA to determine whether the trial court retained continuing jurisdiction to enforce support provisions of its divorce decree now that all parties reside out of state.

{¶25} Pursuant to R.C. 3115.207(A), "[i]f a proceeding is brought under this chapter and only one tribunal has issued a child-support order, the order of that tribunal controls and must be recognized." According to the Official Comment to Section 207 of the Uniform Law, "if only one child-support order exists, it is to be denominated the controlling order, irrespective of when and where it was issued and whether any of the individual parties or the child continue to reside in the issuing state." Once the controlling order is established, R.C. 3115.207(E) provides that "[t]he tribunal that issued the controlling order under division (A) * * * has continuing jurisdiction to the extent provided in section 3115.205 or 3115.206 of the Revised Code."

{¶26} R.C. 3115.206(A)(1) provides that an Ohio tribunal that has issued a child-support order consistent with the law of this state has continuing jurisdiction to enforce the support order if "the order is the controlling order and has not been modified by a tribunal of another state that assumed jurisdiction pursuant to its [enactment of UIFSA]." The Official Comment to Section 206 of the Uniform Law explains that, "even if the individual parties and the child no longer reside in the issuing state, the controlling order remains in effect and may be enforced by the issuing tribunal or any responding tribunal without regard to the fact that the potential for its modification and replacement exists."

{¶27} "'[V]irtually all of the states that have ruled on this issue have held that when the individual parties and child(ren) no longer reside in the issuing state,' in this case Ohio, 'that state nonetheless retains the authority to enforce its order.'" *Dinan v. Dinan*, 12th Dist. Warren No. CA2013-09-082, 2014-Ohio-3882, ¶18, quoting *Sidell v. Sidell*, 18 A.3d 499, 511 (R.I.2011); citing *Johnson v. Bradshaw*, 86 A.3d 760, 764-765 (N.J.Super.2014) (finding New Jersey retained power to enforce its child support order even though parties resided elsewhere as the New Jersey order was the only order setting

defendant's child support obligation); *Lattimore v. Lattimore*, 991 So.2d 239, 244 (Ala.App.2008) (holding "a state retains jurisdiction to enforce a child-support order issued by a tribunal of that state even after the obligor, the obligee, and the concerned child have all moved out of state"); *Douglas v. Brittlebank-Douglas*, 45 P.3d 368, 374 (Haw.App.2002) (finding the issuing state retained jurisdiction to enforce a child support order "as long as the order has not been modified by a tribunal of another state").[2]

{¶28} Neither party asserts that a tribunal in any state other than Ohio has issued a child-support order in relation to their children. Thus, the trial court's support order is the controlling order. *See* R.C. 3115.207(A). Further, because neither party has established that the order was modified by a tribunal in any other state, the trial court had continuing (subject matter) jurisdiction over enforcement of the order. *See* R.C. 3115.206(A)(1). As a result, the trial court had continuing personal jurisdiction under UIFSA to enforce its order against Father. *See* R.C. 3115.202.

{¶29} These rules, when applied together, appear to fold the concept of personal jurisdiction into that of subject matter jurisdiction. In other words, it appears that an Ohio tribunal has continuing personal jurisdiction over a nonresident by virtue of it having continued subject matter jurisdiction to enforce its controlling order. We note, however, that this only occurs when an *Ohio* tribunal is attempting to enforce an *Ohio* order against a nonresident over which the tribunal had initially obtained personal jurisdiction. With that

---

2. As an aside, we note that a tribunal may lose jurisdiction to *modify* an order it issued and yet still retain jurisdiction to *enforce* it. *See Linn v. Delaware Child Support Enforcement*, 736 A.2d 954, 962-963 (Del. 1999), citing the Official Comment to Section 205 of the Uniform Law ("when all the parties and all the children leave the issuing state, the issuing tribunal loses continuing, exclusive jurisdiction to modify its existing order, but does not lose jurisdiction to enforce the order"). *See also DeGroot v. DeGroot*, 939 A.2d 664, 674 (D.C.App.2008); *Lunceford v. Lunceford*, 204 S.W.3d 699, 706 (Mo.App.2006); *Nordstrom v. Nordstrom*, 649 S.E.2d 200, 204 (Va.App.2007); *Collins v. Dept. of Health & Family*, 36 N.E.3d 813, 818 (Ill.App.2014); *In re Marriage of Haugh*, 225 Cal.App.4th 963, 974 (2014).

knowledge, the two jurisdictional concepts again appear distinct, and the application is consistent with a tribunal's inherent authority to enforce its own orders. *See Zakany v. Zakany*, 9 Ohio St.3d 192, 194 (1984) (citations omitted) ("[C]ertain powers as are necessary for the orderly and efficient exercise of justice are inherent in a court. Such inherent power includes the authority to punish the disobedience of the court's orders with contempt proceedings.").

**{¶30}** Because the trial court had continuing personal jurisdiction pursuant to UIFSA, Father's first assignment of error is not well taken.

**{¶31}** Under his second assignment of error, Father argues the trial court erred in determining that the "motions to show cause which led to findings of contempt herein were for failure to pay tax debt, failure to pay attorney fees, and failure to pay for ordinary and extraordinary healthcare expenses for the children * * * do not fall under the purview of the UIFSA, as the Court was not adjudicating any issues related to child support." Issues of statutory interpretation and application are subject to de novo review. *Smoske v. Sicher*, 11th Dist. Geauga Nos. 2006-G-2720 & 2006-G-2731, 2007-Ohio-5617, ¶21.

**{¶32}** Father relies on the definition of "support order," which is defined broadly in the currently enacted version of UIFSA:

> 'Support order' means a judgment, decree, order, decision, or directive, whether temporary, final, or subject to modification, issued in a state or foreign country for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care, arrearages, retroactive support, or reimbursement for financial assistance provided to an individual obligee in place of child support. 'Support order' may include related costs and fees, interest, income withholding, automatic adjustment, reasonable attorney's fees, and other relief.

R.C. 3115.102(BB). The Official Comment to the Uniform Law cautions that this definition "requires more careful reading than might be immediately clear. Virtually every financial aspect of a support order regarding child support or spousal support is covered."

{¶33} We need not decide, however, whether each issue that led to the finding of contempt herein is included in this definition. Rather, we turn to R.C. 3115.210, which governs the application of certain provisions of UIFSA to nonresidents. The section provides:

> A tribunal of this state exercising personal jurisdiction over a nonresident in a proceeding under this chapter, under other law of this state relating to a support order, or recognizing a foreign support order may receive evidence from outside this state pursuant to section 3115.316 of the Revised Code, communicate with a tribunal outside this state pursuant to section 3115.317 of the Revised Code, and obtain discovery through a tribunal outside this state pursuant to section 3115.318 of the Revised Code. *In all other respects, sections 3115.301 to 3115.616 of the Revised Code do not apply, and the tribunal shall apply the procedural and substantive law of this state.* [Emphasis added.]

{¶34} Sections 3115.301 to 3115.616 of the Revised Code include the provisions for initiating a proceeding under UIFSA, issuing a support order, determining parentage, enforcing a support order, and modifying a support order. The Official Comment to Section 210 of the Uniform Law explains that, with the exception of three evidentiary and discovery rules, the multi-state provisions of UIFSA do not apply when an Ohio tribunal is exercising personal jurisdiction over a nonresident because "[a]ssertion of long-arm jurisdiction over a nonresident results in a one-state proceeding without regard to the fact that one of the parties resides in a different state or in a foreign country. On obtaining personal jurisdiction the tribunal must apply the law of the forum." *See also Smoske*, *supra*, at ¶46-54, citing *Case v. Case*, 103 P.3d 171, 175-176 (Ut. App.2004) and

*LeTellier v. LeTellier*, 40 S.W.3d 490, 492-495 (Tenn. 2001) (applying a former, but similar, version of UIFSA).

{¶35} Because the trial court is exercising personal jurisdiction over Father, a nonresident, the multi-state provisions of UIFSA do not govern enforcement of the trial court's divorce decree against Father. We additionally note that Mother did not initiate the contempt proceedings under UIFSA, but according to Ohio's Civil Rules. *See* Civ.R. 75(J) ("The continuing jurisdiction of the court [in an action for divorce] shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ. R. 4 to 4.6."). Accordingly, it was not error for the trial court to apply the procedural and substantive laws of Ohio, as opposed to the provisions of UIFSA, when ruling on Mother's motions.

{¶36} Because the multi-state enforcement provisions of UIFSA do not apply to Mother's motions to show cause, Father's second assignment of error is without merit.

{¶37} The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is hereby affirmed.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.